**The People of the State of Illinois, Defendant in Error, v. Emil Sepich and Arthur Tinsdale, Plaintiffs in Error.**

**Gen. No. 7,775.**

1. CRIMINAL PROCEDURE—*selection of grand jury from part of townships only as vitiating indictment.* An objection to an indictment on the ground that the board of supervisors omitted to select grand jurors from three of the townships is untenable where there could be only twenty-three members of the jury and there are twenty-six townships in the county, the townships from which the jurors are to be selected being a matter for the exercise of the discretion of the board.

2. CRIMINAL PROCEDURE—*manner of serving venire men on grand jury as invalidating indictment.* That the sheriff did not personally serve the venire on the grand jurors but served them by mailing to each a post card which brought them to the bar was no ground for objection to an indictment found by such grand jury.

3. CRIMINAL PROCEDURE—*denial of motion for bill of particulars as discretionary with trial court.* Denial of a motion for a bill of particulars by defendants charged with violation of the liquor law was within the discretion of the trial court and was not error.

4. CRIMINAL PROCEDURE—*when denial to defendants of right of cross-examination not error.* It was not error to refuse defendants in a criminal prosecution permission to cross-examine a witness where there was nothing in the testimony sought to be elicited in any way affecting the credibility of the witness.

5. CRIMINAL PROCEDURE—*when reprimand of counsel for misconduct towards witness proper.* On the trial of a criminal case the court properly reprimanded counsel for defendants for calling a witness whom he was cross-examining a liar and indulging in conduct not in keeping with the dignity of his profession.

6. INTOXICATING LIQUORS—*propriety of instruction as to illegal sale or possession of liquor.* In a prosecution for selling and possessing intoxicating liquor, it was not error to instruct the jury

that it is unlawful to sell or possess intoxicating liquor except as authorized by the statute, followed by the conditions exempting vendors and possessors from prosecution.

7. INTOXICATING LIQUORS—*propriety of instruction as to liberal construction of Prohibition Act.* It was not error in instructing the jury in a prosecution for violation of a certain section of the Prohibition Act to give the jury, along with a purview of the section, a provision contained therein that all provisions of the act should be liberally construed to the end that the use of intoxicating liquors may be prevented.

8. INTOXICATING LIQUORS—*propriety of instruction as to provisions of Prohibition Act as to prima facie cases.* It was proper to embody in the instructions given in a prosecution for violation of the prohibition statute, a provision of the statute that possession of intoxicating liquors by persons not legally permitted to possess them shall be prima facie evidence that such liquor is being kept for the purpose of being disposed of in violation of the act, where it was immediately followed, as part of the same instruction, by the statement that if the prosecution had proved beyond a reasonable doubt the facts constituting guilt such proof was sufficient to justify a conviction unless the defendants show that the act was committed lawfully.

9. CRIMINAL PROCEDURE—*propriety of refusal of requested instruction opposed to express terms of statute.* It was proper in a criminal prosecution under a statute to refuse to instruct that the statute should be strictly construed where the statute provides for liberal construction.

10. CRIMINAL PROCEDURE—*when refusal of instruction as to effect of financial interest of witnesses on credibility proper.* While it would have been proper in a criminal prosecution to advise the jury to consider the financial or other interests of the witnesses for the prosecution, if such interests were proven, along with other evidence for the purpose of determining the weight to be given to their testimony, a request to instruct that the jury should consider such interests in making up their minds whether the State had proven defendants guilty was too broad and its refusal was not error.

11. CRIMINAL PROCEDURE—*propriety of refusal of instruction as to necessary degree of proof of guilt.* In a criminal prosecution a request to instruct that if the evidence was "strong enough to make it probable that the defendant is guilty as charged, if it fails to establish his guilt of the offense alleged "it was the duty of the jury to acquit, was properly refused.

12. HARMLESS ERROR—*harmlessness of refusal to give instruction of which substance is given in other instructions.* Refusal of defendants' request of a charge usually given in criminal cases deal-

ing with the burden of proof, presumption of innocence and the necessity of proving guilt beyond a reasonable doubt, was not harmful where the points were fully covered in other charges.

13. Criminal procedure—*propriety of instruction as to degree of proof of guilt.* A charge was properly refused which would have advised the jury that, though the evidence of defendant's guilt were established beyond a reasonable doubt, if the evidence tending to prove his innocence is sufficient to raise a reasonable doubt of guilt in the minds of the jury proof of his innocence is sufficient in law and the jury must find the defendant not guilty, as it would require a verdict of not guilty upon consideration only of the evidence tending to prove innocence instead of upon all of the evidence.

14. Criminal procedure—*propriety of refusal of veiled or ambiguous instruction.* Instructions requested in a criminal case were properly refused when, though in terms leveled at the credibility of the witnesses, they went to the weight of the testimony.

15. Intoxicating liquors—*joint liability of defendants for illegal sale and possession of liquor.* In a prosecution of two defendants jointly for selling and possessing intoxicating liquor it was immaterial who owned the place, a soft drink dispensary, where the liquor was shown to have been possessed and sold, it being shown that both defendants were there and some of the time in charge of the business.

Error by defendants to the County Court of Fulton county; the Hon. J. D. Breckenridge, Judge, presiding. Heard in this court at the October term, 1924. Affirmed. Opinion filed March 6, 1925.

Joseph R. Martin and Fred H. Snyder, for plaintiffs in error.

Floyd F. Putman, State's Attorney, for defendant in error.

Mr. Justice Crow delivered the opinion of the court.

The grand jury of Fulton county returned a true bill of indictment against plaintiffs in error charging them with selling and with possessing intoxicating liquor. The indictment was certified to the county court for process and trial. It consists of six counts. The first four charge in varying terms unlawful sales of intoxicating liquor; the fifth and sixth charge the

unlawful possession of intoxicating liquor. Upon a trial by jury plaintiffs in error were found guilty as charged in the first, second, third and fifth counts. Motions for a new trial and in arrest of judgment having been overruled, judgment was rendered against defendants severally for fines imposed and for costs and they were severally committed to jail for 120 days. To reverse the judgments so rendered they have prosecuted a writ of error to this court, assigning on the record twenty-one errors.

It is unnecessary to enter into a discussion of the evidence. While many errors are assigned, only ten are mentioned in the brief and they only will be noticed.

The first assignment of error challenges the ruling of the court in refusing to quash the indictment and each count of it. The reason or ground urged for quashing it is, the Board of Supervisors of Fulton County omitted to select grand jurors from three townships, there being twenty-six townships in the county. There could be only twenty-three members of the grand jury and they are required to be selected by the board of supervisors. The townships from which they came were matter for the exercise of its discretion. It would be needless labor to pursue this assignment further. An equally untenable ground urged is, the sheriff did not personally serve the venire on the grand jurors, but served them by mailing to each a postal card, which brought them to the bar. No other grounds are presented in the brief or argument as to the sufficiency of the indictment. It was not error to overrule the motion for the assigned reason.

The second error urged in the brief is the denial of motion of plaintiffs in error for a bill of particulars. That was matter in the discretion of the court and was not error. The third error challenges the ruling of the court on refusing to permit cross-examination of the witness Westerfield. We have read his evidence

and the questions asked, and the court's ruling thereon. There is nothing in the evidence sought to be elicited that in any way affected the credibility of the witness. The court was exceedingly indulgent with counsel for defense when he suffered him to persist in the attempted cross-examination after his rulings. No legal error intervened in this respect.

The fourth complaint in the brief is in these words: "The conduct and demeanor of the trial judge in the presence of the jury during the trial was unfair and tended to prejudice the defendants before the jury." In support of the complaint counsel say: "It is prejudicial error for the trial judge in a criminal case to interrupt without justification the argument of defendants' counsel who is keeping within the record and to remand and criticise him and not allow him to testify as to any conversation. *People v. Hamilton*, 268 Ill. 390." We copy exactly the language of the brief. The fifth complaint touches on the same matter and is proper to be discussed with that just preceding. It is: "That the trial judge during the trial of this cause and in the presence of the jury made improper remarks to the defendants' attorney which tended to prejudice these defendants before the jury and to prevent the defendants from having a fair and impartial trial." Reference is again made to *People v. Hamilton* and to both propositions reference is made to pages 54 and 55 of the abstract.

We have read all the testimony and all colloquies between court and counsel and all rulings by the court as abstracted. The matter referred to did not refer to argument but to the course of counsel in the cross-examination of the witness. To speak within the bounds of moderation it is a matter of surprise that counsel should urge upon this court the alleged improper remarks by the court as referred to on the pages mentioned of the abstract. The witness Westerfield testified for the prosecution. His testimony as printed in the abstract occupies 28 pages of the

record, with improper remarks between counsel, objections by counsel and the court's rulings on objections. Westerfield was an investigator in "bootlegging cases." His evidence was particularly damaging to the case for defendants. It appears from the abstract that one of counsel was cross-examining him. He had testified to certain conversations he had with that attorney at his office. The cross-examination led up to the point where the witness was asked: "Q. Didn't I tell you in substance that I couldn't help you, that I was representing a number of bootleggers and that I couldn't help you? A. Yes, and the best thing to do was to get out of the County and State. Q. That I told you that? A. Yes, sir. Mr. Martin: You lie!" It was at this juncture the court reprimanded the attorney and warned him not to call a witness a liar. To this he replied he was going to uphold his own integrity at the bar. The court interrupted him saying: "The court will take care of the witnesses too. If you haven't enough courtesy to not call a witness a liar you will be fined." Counsel: "I am very sorry and beg pardon of the court, but I am going to maintain my own dignity in and out of this court room." After further exchange of words along the same line some reference was made to hypnotism. To this counsel replied: "I don't profess to be a hypnotist and I am only trying to run it (the court) in an ordinary way, but I am going to run it in my fashion and according to my idea of ethical practice." The Court: "You will be permitted to do everything that is proper and right but any conduct of yours in this court room will not be permitted to make this a show or anything like a street brawl. That kind of conduct towards a witness the court will not stand for."

The foregoing is not all the disgraceful conduct calling from the court the "improper remarks" sought to be utilized in procuring a reversal of this case. All along through the trial remarks between counsel were

exchanged tending to a state of temper likely in the trial of causes to provoke hot words. The attitude of counsel as we gather it from the record, in his cross-examination of this witness, no doubt because his testimony was imperiling the cause of his clients, was not in keeping with that dignity of carriage manifesting the refinement belonging to a great profession. The court was right in protecting the witness who in his situation could not resent insult in the manner of some places possessing an atmosphere different from that of the court room. Such conduct should be promptly visited with such punishment as the court can employ. It is to be regretted it was not done in this case. Counsel cannot consistently expect to provoke the court to proper rebuke, though harsh, and then expect this court to relieve his client from the result of his own wrongs and improprieties in his defense. To characterize the judge's action in this case as "conduct and demeanor" does not invite favorable consideration from this court.

The sixth ground for reversal in the brief is, giving instructions 2, 3 and 6 for the People. The second tells the jury that "in this State it is unlawful for any person to manufacture, sell, barter, transport, deliver, furnish or possess any intoxicating liquor, except as authorized in the Prohibition Act, and that all provisions of said Act shall be liberally construed to the end that the use of intoxicating liquors as a beverage may be prevented." An additional clause further informs the jury of the exceptions authorizing the manufacture, purchase, sale, barter, transporting, delivering, furnishing and possession of such liquors. The third tells the jury: "The possession of intoxicating liquors by any person not legally permitted under the Illinois Prohibition Act to possess liquor shall be prima facie evidence that such liquor is kept for the purpose of being sold, bartered, exchanged, given away, furnished or otherwise disposed of, in violation of said Act, and the burden of proof shall be upon the

possessor in any action concerning the same to prove that such liquor was lawfully acquired, possessed or used. If the prosecution shall prove from the evidence beyond a reasonable doubt that a defendant has manufactured, sold, bartered, transported, delivered, furnished or possessed any intoxicating liquor in manner and form as charged in the indictment, such proof shall be sufficient to justify a conviction under such indictment, unless such defendant shows that the act complained of was committed lawfully under the provisions of the Illinois Prohibition Act.''

The second instruction advises the jury in the language of the statute that ''it is unlawful for any person to manufacture, sell, * * * or possess'' intoxicating liquors except as authorized by the act. The advice was clearly within the bounds of propriety. The exception is explained by inserting in immediate connection therewith the conditions exempting vendors and possessors from prosecution. It is said in criticism the court should not submit to the jury the construction of the statute, and it did not do so. The interpretation clause found in the section was given along with the purview of the section, but it could not and doubtless did not mislead the jury in this case. The third given, of which complaint is made, is in the language of the statute. It is a rule of evidence. It was the peculiar province of the court to advise the jury that if certain things are proved they may, therefrom, infer others. While the section of the statute is embraced in the instruction, it is immediately followed by, and as part of the instruction, the statement that if the prosecution had proved beyond a reasonable doubt the facts constituting guilt, such proof was sufficient to justify a conviction, unless the defendants show that the act was committed lawfully. The conditions of guilt being given to the jury, and the conditions of exemption from guilt being also given, the jury were properly instructed. The power of the legislature to create rules of evidence and to declare

the presumptions that may be drawn from facts proved is fully and clearly discussed by Mr. Justice Dunn, writing the opinion holding a similar instruction good, in *People v. Beck,* 305 Ill. 593. The authorities are there so fully reviewed and application made of the power to so many subjects of criminal prosecutions, we deem it necessary only to refer to it. There was no dissent and nothing seems to have been omitted to make it clear that the legislation is not only valid, but is grounded upon sound policy in the suppression of offenses of this and kindred character. We think the sixth instruction was properly given. No valid objection to it is pointed out and we have been unable to discover any.

In the argument counsel say they are of the opinion the instructions complained of tended to prejudice the defendants because they inform the jury all provisions of the act shall be liberally construed to the end that the use of intoxicating liquor as a beverage may be prevented. They further say that in their opinion the converse is true, that all penal statutes are to be strictly construed. These are the only objections to the instructions pointed out. They are not valid. They asked the court in two instructions to so instruct the jury, which were refused. Generally it is true such statutes are strictly construed. But the legislature has seen fit to prescribe a different rule of construction under the Prohibition Act. We must accept it as it has been given to us until the Supreme Court shall declare it unconstitutional. The act now under consideration is one for the enforcement of the declared policy of the State with regard to intoxicating liquor, like many other acts referred to in the *Beck* case, *supra.*

It is contended the court erred in refusing to give on behalf of plaintiffs in error instructions numbered 1 to 8, inclusive. The fifth and eighth, refused, sought to have the jury instructed that the statute in question must be strictly construed. The refusal of those in-

structions was proper, being contrary to the declared rule noticed heretofore. If the refusal to give an improper instruction as to the construction of the statute is error, it cannot consistently be urged that the giving of a proper instruction on that subject is error. The first refused related to the credibility of witnesses on account of the financial or other interest of witnesses and tells the jury they should consider such facts in making up their minds whether the State had proven the defendants guilty. It would have been proper to advise the jury to consider such facts, if they were proved, along with all other evidence in the case, for the purpose of determining the weight to be accorded to the testimony of such witness. But the caution is too broad in its effect. Though the evidence might tend to show that a witness may have been influenced by any motive to testify to a fact or particular state of facts, yet, in determining the weight to which his testimony was entitled, it should be considered with all other facts and evidence, and if in harmony with the testimony of unimpeached witnesses or undisputed facts and circumstances, it would be entitled to full weight. The second refused was not a correct expression of the rule as to the strength of evidence to warrant a conviction. By it, if the evidence was "strong enough to make it *probable* that the defendant is guilty as charged, if it *fails* to establish his guilt of the offense alleged," it was made the duty of the jury to acquit. All facts depending for their belief on human testimony are capable only of probable truth. Belief is a state of mind engendered by evidence, testimonial or other. The law out of tender consideration for defendants charged with crime requires that the degree of conviction in the minds of a jury warranting a verdict of guilty must go to the extent of creating a probability of the truth of the charge that amounts to moral certainty—a conviction, a belief, excluding every reasonable doubt of

guilt. It is the sort of conviction that the instruments of human evidence are capable of producing. If the question involved were mathematical, doubt would be excluded by the processes of mathematics—a progression from one certain proposition to another or others necessarily related and certain—the result being the highest degree of conviction that can control human judgment, demonstration. Proof beyond reasonable doubt is nothing more than a high degree of probability. The evidence may establish probability without that high degree, excluding not mere doubt, but reasonable doubt. It was not error to refuse the instruction. Besides, the eighth given for plaintiffs in error covered as strongly as they were entitled the legal proposition sought to be conveyed by the second refused.

The third refused of which complaint is made is one usually given, at least in substance, but its refusal could not possibly have influenced the result of the jury's deliberations. It deals with the burden of proof, presumption of innocence, and as a corollary the necessity for proving guilt beyond a reasonable doubt. The points were fully covered in others given. The fourth was properly refused. It would advise the jury that if the evidence of defendant's guilt were established beyond a reasonable doubt, if the evidence tending to prove his innocence is sufficient to raise a reasonable doubt of guilt in the minds of the jury "proof of his innocence is sufficient in law and the jury must find the defendant not guilty." No comment is necessary except that it requires a verdict of not guilty upon consideration only of the evidence tending to prove innocence. It should be considered with all the other evidence. The sixth and seventh refused, while in terms leveled at the credibility of the witnesses, go to the weight of the testimony and were properly refused.

It is assigned as ground for reversal that the ver-

dict of the jury is contrary to the law and the evidence. With the argument on that proposition it is contended the offense with which defendants are charged is not a joint offense under the statute. We think under the evidence no other conclusion could reasonably have been reached than that returned. It was immaterial who owned the "Senate," the name of the place where the liquor was shown to have been possessed and sold. Both defendants were there, and some of the time in charge of the business. It is not material, either, that it should appear who was the owner. It was a violation of the law to sell or to have in possession in that building intoxicating liquor. Sepich was the proprietor. He sold cigars, "soft drinks," lunches, had a shoe-shining outfit, and a piano. He was a "regular soft drink dispenser." Many people patronized him with a good business. Tinsdale was employed by him, but, he testifies, Tinsdale was never associated with him as part owner. He denies all the incriminating evidence given against himself and against Tinsdale. Tinsdale did not testify. After he left the employment he "hung around" the place. The place had been raided several times. It is not likely that a person of Tinsdale's character would "hang around the place" if there was no intoxicating liquor. If such liquor was there, it is still more improbable Sepich would be ignorant of it. The men who testified against defendants had no apparent motive to so testify except to tell the truth. Nothing in the record shows investigators were being paid for results. The jury saw all the witnesses and observed their manner of testifying. They were competent to determine the truth from the whole evidence. A careful consideration of it does not raise a doubt as to the correctness of the verdict. Under the principles governing the review of trials we are not warranted in reversing the judgment and ordering a new trial. The jury found both defendants guilty and specified the counts upon which they so found.

What we have said disposes of the remaining errors presented by the brief, alleged error in denying motion for new trial and the motion in arrest of judgment. The only ground assigned in the brief for arresting judgment was the alleged defect in selection of the grand jury and that is without merit.

The judgment of the county court of Fulton county is affirmed.

*Affirmed.*